The court of Illinois is reconvened. You may be seated. That's our first case of the afternoon, 415-0699, Decatur Park District v. City of Decatur for the appellant, Mr. James. For the appellee, Mr. Robinson, you may proceed. Good afternoon, your honors. My name is Greg James. I'm here on behalf of the Decatur Park District. May it please the court. At issue in this case is whether the trial court erred in denying the Decatur Park District's verified petition for writ of prohibition and granting the City's motion to dismiss based upon Section 2619 of the Code of Civil Procedure. Because these are the issues presented, I think it's important to clarify up front some important points. First, the court has jurisdiction over this appeal under Rule 301. It's not Rule 308. We're not here on certified questions. We're here on a final order where the court dismissed our verified petition for writ of prohibition. Also, because this appeal comes to the court on a dismissal pursuant to 2619, all of the facts pleaded in the Park District's petition are deemed admitted. This is doubly justified in this case because all of the facts in the District's petition for writ of prohibition were verified, specifically by multiple witnesses under oath. And because we are here on undisputed facts, the standard of review is de novo. More broadly, the issue before this court is whether the City of Decatur can exempt itself from a so-called human rights ordinance, but force the Park District, a co-equal body of government with its own elected officials and its own police department, to participate in a hearing and then potentially have to pay money to the City of Decatur, expenses of the hearing, and have to pay damages to a complainant, attorney's fees, and perhaps have equitable relief involved. Because the Park District's Chief of Police reported that employee's commission of a crime, it would seem to me that the public policy of the State of Illinois is that if someone is a victim of a crime, they ought to be able to report it to police. And that the police ought to be able to then refer that to an appropriate authority. As a matter of law, I actually don't think that that can be the basis for retaliation, since all the courts of Illinois and the retaliatory discharge cases have held that it is the public policy of Illinois that you be able to report crimes. What does that have to do with why we're here? Your Honor, because... We're not at that point yet. I don't know whether it's the public policy that... I don't know if that's a question that's going to be asked of you. I understand. Well, do you? I mean, what do I mean by that? I do think that the issue is whether or not our petition of writ of prohibition could be, or should have been granted, and whether or not the city was acting beyond the scope of its authority. We believe that that complaint down below should have been dismissed, because proceeding against us would be against the public policy of the State of Illinois. But not because of... Because of this felony charge? I'm sorry, Justice... Maybe you're not following. I'm not following. How do we get to the point of talking about the charge, when you really want to talk about the interference of the city into the Park District's business? I think there's two prongs, if I'm following, Your Honor. There's two prongs. One is that the city we contend has no jurisdiction to enforce this ordinance against us. And two, with the writ of prohibition, even assuming there was jurisdiction, if they are acting beyond their legitimate authority, then the writ of prohibition also should have been granted. And it's our position that on the undisputed facts of this case, to have basically a trial by a civilian commission, that it would be against the public policy of the State of Illinois, because people have an absolute right to report when a crime has been committed against them. And a chief of police, he's got a job and a duty to report that. Are you saying that reporting a crime could never be the basis for a retaliatory discharge? And if so, do you have a case that says that? Your Honor, I don't know if it could ever be the basis, but I would suggest to the Court that on these undisputed facts, where the parties have sworn... Well, what do you mean you don't know? You said it should be the public policy. I thought... I'm not arguing with you, but I thought that's where you were going. Whether it be the district or an individual in the district that simply makes a report of what they believe to be a crime, I thought you were saying as a matter of public policy, that should not be the basis for retaliatory discharge. I think that on the undisputed facts of this case, it absolutely cannot serve as a basis. I can envision times when it would be tortious to report a crime. For example, if it were done in bad faith, if it were done maliciously, and there's cause of action for that. I have not seen a case that says you can't have a retaliatory discharge action against a person that reports a crime. But if all those cases that say it's the public policy of the State of Illinois that if you're right to do that, it's absolutely protected, then it just seems to me that the other side of that calculation would be true as well. Your Honors, it's also important, I think, to clarify that this is not a discrimination claim. Throughout the city's brief, they refer to it as a discrimination claim, but it's not. It's a retaliation claim. And that's important for two reasons. First, we argue that under the undisputed facts, there is no factual basis for a retaliation case. And it's important, too, to understand this retaliation case, because under Section 7-108 of the Illinois Human Rights Act, it applies to claims for discrimination. It does not say that it applies to claims for retaliation. And that's what this claim is about. So if the hook that the city is using to say we have jurisdiction is because we've got 7-108, and I think that's what they're arguing here, there's nothing in 7-108 that says that one governmental entity can act unilaterally to impose its will upon another. Instead, it says that one or more acting jointly can form a local commission or a board. And so we don't believe that under that statute the city has jurisdiction. And if it has jurisdiction, we don't believe it has the authority to enlarge the statute to include retaliation claims when it's limited to discrimination claims. And they can't enlarge it unilaterally, exempt itself and basically stick it to the park district. I think it's important to understand that there can't be a cause of action here for retaliation because the park district didn't cause Ms. Bates to be arrested. The undisputed facts show that the park district actually consulted with council. They considered their different options, things that they could do, and the park district affirmatively decided that the park district was not going to investigate this matter further. So what's Mr. Brewer to do? He was a victim of a crime on park district property during park district time as he was doing his job as an employee by another park district employee. So he brought it to the chief of police. The chief of police acts consistent with what the park district decided. We're not investigating this further, and he simply referred it to Macon County. The park district didn't cause Ms. Bates to be arrested. The decision to arrest or not to arrest, that belonged to the Macon County sheriff. And it doesn't lay at the feet of the park district. Isn't there some communication between the head of the park district and the state's attorney's office? Your Honor, that is an allegation in the underlying charge. In our petition for writ of prohibition, which, again, we believe that those facts have to be taken as true on a 2-6-19 motion, which is what we were down below on. We didn't have a hearing. We didn't put on witnesses on our petition for writ of prohibition. It just was dismissed outright. There is an allegation that after the fact, after Ms. Bates had been arrested, after the alleged retaliation occurred, that the state's attorney-elect, he called the director of the park district. What do you mean, state's attorney-elect? It was the state's attorney-elect at the time, Your Honor, when that phone conversation took place. Okay, well, what is the term state's attorney-elect? Well, J. Scott was not yet, did not yet hold the office of the state's attorney. He had been elected to fill that office, but I do not believe he was. So why would anybody care what he said? He's not the state's attorney. I'm with you, I'm with you, Your Honor. Was he an assistant state's attorney in the office? I don't know if he was an ASA prior to being elected. I assume that, but the record is silent on that point. I know that he had been elected to be the state's attorney, but he had not yet taken on the position. I think there's a gap between election and appointment. Well, the quote from, I think, the brief is, Macon County State's Attorney-Elect J. Scott informed me, this is a quote from the supervisor, I think, on October 25, 2012, that he had not filed the eavesdropping charges against complainant because the district's executive director, William Clevenger, had told Mr. Scott that respondents just wanted to see this whole thing go away and that the respondent would not push for prosecution if the complainant would drop a charge of unlawful discrimination against the respondent. So it seems to me if he's talking about not filing charges, he must have been in the office of the state's attorney at the time. Your Honor, I apologize. All I know is that he was elected to the position, but was not yet occupying it. That is my understanding. That's my understanding. And that's what the record states. I could be misinformed, but that's all I know about it. At any rate, following what Justice Turner said, I think it is irrelevant what happened after Ms. Bates got arrested. If the state's attorney or a state's attorney-elect or any ASA called the executive director and asked him, what would you think if I don't press charges, I think that would be irrelevant to a claim of retaliation here. I don't know if I said that. I was trying to put that in the form of a question. I understand. Would it be irrelevant? I understand. Let me rephrase that. I believe that it would be irrelevant because if there was retaliation and what's claimed below in the complaint or in the charge by Ms. Bates is that she was retaliated against because the crime was reported and she was arrested. So some conversation after the fact that did not harm her couldn't result in a viable retaliation claim. There would have to be some damages or some harm that would follow from retaliation. Well, counsel, I do think it's relevant that neither the district nor the brewer can arrest or cause to have someone arrested. Nor could the district or brewer prosecute or cause someone to be prosecuted. Those are decisions up to the sheriff in this particular case and the state's attorney. Isn't that right? That's absolutely correct, Your Honor. As a matter of fact, this actually bolsters our case because the park district, pursuant to the park code, has its own police department. So had the park district wanted to, they could have arrested her, but they chose not to do that. Instead, they turned this over to another agency to make this decision. So when you're saying using the term chief of police who did the original report, this is actually a chief of police of the park district? Absolutely, Your Honor. Absolutely. And that's very important. The park code allows the park district to be created to have an elected board of commissioners. They hire an executive director who's the chief executive. The park code also expressly authorizes park districts to form a police force. And the Decatur Park District has one. And it's our position that the city is not the boss of our police chief and is not the boss of our executive director and can't call upon the city, can't cause those people to answer to the city. They answer to their own elected board, an independent unit of government. And there's the statutory grant of authority that the city hooks itself into, the Human Rights Act. It says that it requires joint action. If there's going to be a local ordinance, it requires joint action of governmental entities for their jurisdictions. Well, since they have a chief of police in the district, does the district also have then prosecutorial powers? It doesn't, Your Honor. It doesn't have prosecutors. But the chief of police could make an arrest? Absolutely, Your Honor. A hundred percent. A hundred percent for sure. I've represented numerous park districts in all kinds of cases involving arrests. But in this case, it was the sheriff's department from Decatur County that made the arrest. Yes, Your Honor. And they made that arrest, as I understand it, several weeks after the alleged crime and yet did not have a warrant. Is that correct? I don't know anything about whether they had a warrant or not. The record is silent on that. The record does not say. It doesn't say, Your Honor. Mr. James, I want to go back to a comment you just recently made about joint. Because the way I read the statute, it says a political subdivision or two or more political subdivisions acting jointly may create a local department commission. And the purpose is to secure for all individuals within the jurisdiction of that political subdivision freedom from unlawful discrimination. So I don't see where it's required that two political subdivisions act jointly. One political subdivision could act on its own under that statute. I think that one political subdivision can act on its own to govern itself. But the statute reads that, Bear with me. And I'm quoting here from Section 7-108A. It provides that a political subdivision or two or more political subdivisions acting jointly may create a local department or commission as it or they see fit to promote the purposes of this act. Your Honor, I would suggest that the way to read that is that if one jurisdiction can't unilaterally rule another one, that actually they have to act jointly as they see fit to create a commission. Or is a school district a political subdivision? It is, Your Honor, but it's not the same as a park district. Well, you know, I'm getting at that case. Right, the Brevin case, Your Honor. I do think that the Brevin case is distinct. I'm glad the court asked the question. A park district isn't a school board. Under the park code, a park district is a body corporate and politic. I don't think that school districts can form their own police forces. I don't think that they get to do that. In a school district, they only have jurisdiction over their small realm. They've got bricks and mortar schools. They've got the facilities that support the schools. Park districts are very different. They have broad powers and authorities. And they don't just serve the people in a school district. They serve patrons at large from anywhere in the state. So the park district affects patrons that are removed from the city of Decatur, have nothing to do with the city of Decatur. I could go to the zoo at the Decatur Park District. I don't think that the city gets to regulate if I commit some human rights violation when I'm there. I don't think that that extends there. Certainly, I don't think that they ought to be able to tell the park district what to do, even if they could regulate me. But they could come there and arrest somebody. The park district can. No, the city. Yes, Your Honor. I think that they can arrest people if they commit a crime. So they can invade the province of the park district to perform the duties that they are expected to perform within the boundaries of the city of Decatur. Your Honor, I'm really not certain how much authority a city police officer has to go do something in a park district. I know that there are intergovernmental agreements between park districts and local police departments. How about a fire? I don't think you want to meet them at the gate and say, We haven't worked out that intergovernmental agreement yet, so we're just going to have to make you stop at the gate and let the zoo burn down. Your Honor, I just don't know the answer to that question, whether a city can come into park district property whenever it feels like to make arrests under whatever ordinance they feel like. Are you obligated under a city code in terms of building specifications, electrical work, plumbing work? I don't think so, Your Honor, and it might depend on the case. There's one Supreme Court case I saw out there where a local governmental entity, I think it was the Becker case, was allowed to regulate a park district, but there the park district had agreed in the lease that it could be regulated. And there's other cases that say, you know, if this is within the park district's authority, the city can't regulate them. It can't tell them where to put a golf course or if to put a golf course someplace. It can't tell the park district whether or not they could have a shooting range somewhere. If the city has no authority to monitor the district for discrimination, who does? Thank you, Your Honor. I appreciate that question. You're welcome. Who has it? A lot of agencies have it, and this is actually another reason why it makes no sense that the legislature intended for the city of Decatur to have it. Who has jurisdiction over us? One, the Illinois Department of Human Rights. Two, the EEOC. There's an entire giant rubric of statutes that prohibit discrimination and retaliation. We've got all the panoply of federal laws, age discrimination, sex, disabilities, whistleblowing, all kinds of statutes. I can see you're out of time, but just one more question. Yes, sir. Is that why you began your argument when you said something, and I can't remember exactly, was that the city exempts itself, and yet from – well, why don't you restate it so I can – Your Honor, I think that's – It exempts itself from something it wants to impose upon the district, is what you said. The city has created this human rights ordinance, and it exempts the city government itself from the ordinance. It sounds like something Congress has frequently done, where they pass laws for everybody else, civil rights laws for everybody else, but not – So even though the city exempts itself, it would still be subject to the Illinois Department of Human Rights and the EEOC, et cetera. Okay, I understand it now. We'll hear from you on rebuttal. Thank you, Your Honors. Good afternoon, Your Honors. John Robinson for Eppley's Decatur Human Relations Commission and the City of Decatur. May it please the Court. As stated by the Illinois Supreme Court in the Arenek case, a writ of prohibition is an extraordinary remedy,  where the petitioner shows a clear right to the request of relief. The writ of prohibition to be issued – the petitioner has to show that the action to be prohibited is judicial or quasi-judicial in nature, that the jurisdiction of the tribunal against which the writ is to be issued is inferior to the issuing court, and that the action to be prohibited is beyond the tribunal's jurisdiction or beyond its legitimate authority. And if that is not an issue, then there is a requirement that the petitioner exhaust remedies. The Decatur Park District has simply failed to demonstrate a clear right to a writ of prohibition because it has failed to make a clear showing that the Decatur Human Relations Commission lacks jurisdiction or that its ruling on the Park District's motion to dismiss, based on the affirmative defense of discretionary immunity, is beyond the Human Relations Commission's legitimate authority. The Decatur Human Relations Commission has jurisdiction to consider complaints and prefer charges alleging retaliation for instituting a complaint of unlawful discrimination, which is what happened here. This is not a matter of retaliatory discharge. That's not the facts. The facts are the charging party before the Human Relations Commission of Decatur was discharged by the Park District. It wasn't until after she was discharged that the facts giving rise to the retaliation arose. And that is significant because, as I said, this is not a case of retaliatory discharge. This is a case of retaliation. And retaliation is a prohibited conduct under both the State Human Relations Act and the Decatur Human Relations Act. And that's really what we're dealing with. Why does the Decatur Human Relations... Well, can reporting a crime be considered retaliation? Absolutely. Retaliation is anything that would tend to dissuade a party from making a claim of unlawful discrimination or participating in an investigation of unlawful discrimination. That's what the Hohfeldt v. Illinois Department of Human Relations case stands for. That's what the Burlington Northern case stands for. You say Hohfeldt stands for that proposition? Yes. To establish a prima facie case of discrimination under McDonnell Douglas, the complainant must demonstrate that she engaged in protected activity that was known to the respondent, that the respondent subsequently took some adverse action against the complainant, and that there's a causal connection between the protected activity and the disadvantageous action. But the city... I mean, if it ever got to a hearing at the city's human rights division, the city could find, yes, they had her arrested or they made this complaint, but it wasn't for retaliation, it was because she committed a felony. Absolutely. And this brings us to the important element of the status of the charging party's complaint here, which is she's not yet been afforded a hearing on the facts. Appellant herein would urge that the court consider facts, facts, facts, verified pleadings, facts. Well, to do that, the court ends up using its judgment to consider the facts rather than following what the General Assembly said, which is we're going to create a Department of Human Rights and we're going to also delegate that authority to local governments. And not only that, but we're going to provide that that is charging parties' exclusive remedy. And so if the court is to consider the facts here on the verified pleading, then it essentially deprives the charging party of an opportunity to present her side of the story. Well, what about their argument that she could have gone to the Illinois Department of Human Rights or the EEOC to make a complaint? It's absolutely correct. For reasons that are beyond my pay grade, the United States Congress passed the Equal Employment Opportunity Act and authorized it to have jurisdiction coexistent with states. And the Illinois General Assembly passed the Illinois Human Rights Act and authorized it to have jurisdiction not only coexistent with the federal EEOC, but also with local human rights agencies. So why does the city think it has jurisdiction over the district? Because the city and the district are not, as counsel urges, co-equal units of local government. The city has not only a specific grant of authority under the Human Rights Act, but also has its residual authority under the Constitution of 1970 under the Home Rule section. That Home Rule section of the Constitution, the specific grant of authority by the Illinois General Assembly, and the grant of authority by the Decatur City Council in enacting the unlawful discrimination section of the city code, clearly establish authority and jurisdiction for the Decatur Human Relations Commission to consider charges of discrimination. The Holfield case that you cited to me a few minutes ago, is that in your brief? I'm looking for the citation. It is in the record below. It is found in the finding of probable cause by the Decatur Human Relations Commission. Yeah, I saw it there. I didn't think it had a citation, or at least not a citation that I recognize. But I'll try to look up again if you don't have it. I have that in my binders. I don't have it before me, but I have a citation for that case. Not only does this Decatur Human Relations Commission authority stem from the Constitution, the express enactment of the General Assembly, and the express enactment of the Decatur City Council, but it's been interpreted to apply to other units of local government. And that, of course, is the Bremen case. There's also a case out of Peoria involving the Peoria School District, in which case the appellate court over there said, well, the problem here is that the Peoria School District is not coterminous with the City of Peoria, and to allow the City of Peoria to exert this type of authority beyond its territorial boundaries would allow the city to exceed its authority, implicitly suggesting that within the boundaries of the City of Peoria, the City of Peoria may regulate complaints of discrimination, including retaliation, including complaints involving the school district. Now the thing about school districts and park districts is they are not co-equal units of local government because of the grant of home rule authority. Similarly, their authorities, their statutory grants of authority, tend to evolve or revolve around their authority to do specific things. In terms of school boards, they're granted plenary authority when it comes to educating students. When it comes to park districts, they're granted virtually plenary authority when it comes to establishing and regulating parks. But there's nothing about employing people and treating them without unlawfully discriminating against them that goes so to the core of either the education function or the park district and recreation function that suggests that Decatur's authority to regulate unlawful discrimination should not apply to school districts or park districts. The finality of the Decatur Human Rights Commission order is significant for the court to consider. Finality of judgments under Supreme Court rules may be viewed as a matter of judicial economy. We don't want to burden appellate courts by having matters partially in an appellate court and partially in a trial court. However, it takes on added significance when the tribunal that is below, the inferior tribunal, in this case the Decatur Human Relations Commission, is essentially a part of the executive function of the city of Decatur. And the reason I say that is because as part of the executive function, it's kind of the flip of the Arenik case. In Arenik, the Illinois Supreme Court said, Department of Labor, you can't tell us who's judicial employees and who are not. Because that would usurp the authority of the judiciary and violate separation of powers. Well, the finality of the Decatur Human Relations Commission order is kind of the flip of that. Because to allow the park district to come to the court before there's a final decision of the administrative agency is an invitation to draw the courts into being too involved in the executive function of the city of Decatur. And for that reason, the writ of prohibition was also correctly denied. Because there is jurisdiction, and because there is nothing about the Human Relations Commission's denial of the park district's motion to dismiss based on the affirmative defense of immunity, the park district is also required to make the additional showing that it has exhausted its administrative remedies. And in this case, they simply have not done that. Because they have administrative remedies available still to them, including seeking rehearing on the motion to dismiss before the Decatur Human Relations Commission, including hearing on the merits and appeal of any adverse ruling. And it's also sort of an extraordinary remedy that is available to them under the Decatur Human Relations Ordinance. And that is, they could certify denial of their motion to dismiss as a matter that is subject to interlocutory appeal under the same standards that the Supreme Court set forth in its Supreme Court Rule 308. It's also in the Decatur Ordinance. I realize that... was brought. That is shown. And yet, Bates-Ellum is eventually prosecuted and convicted of a felony. Where would that leave all of this? Would the district still be liable? Because it seems like that's what you're arguing. Well, I'm not arguing the facts. I'm arguing the... Okay, well, consider my hypothetical, then. Thank you. Thank you, Justice Turner. Under your hypothetical, it is not the act of the state's attorney that forms the basis for the retaliation. It is the allegation that, by the investigator, that the director of the Park District attempted to engage in bargaining discussions with the state's attorney. Yeah, under my hypothetical, that would be considered as what happened. That is what happened. But she is guilty of the eavesdropping charge and is therefore convicted of a felony. Then the remedies are they have to rehire or they're subject to pain damages. To me, this whole thing, I guess, just doesn't logically make a lot of sense. This could actually be an outcome, if we were all in your favor, that could occur. I don't know if it's likely to occur, but it could. And I agree with that. It certainly could occur that the Human Relations Commission would find that the Park District retaliated against the charging party. And it similarly could occur that the state's attorney determined to charge the charging party and take her to trial and perhaps win a jury trial, even, on the criminal charge of eavesdropping.  Well, how about the request for damages and for reinstatement? That's in the prayer for relief, isn't it? That's correct. And she would still, even if convicted, be entitled to reinstatement or to possible damages? I don't know that she would be entitled. I believe that that is a potential remedy that is available to the Human Relations Commission. And it would still be an available remedy, even under the hypothetical that I've set forth? I believe that's correct. Wow. Okay. Unless there are other questions, I believe I've covered the main points that Appleese wished to have covered. Can you tell me what public policy is served by the city exempting itself? So that a city employee, if I understand this correctly, a city employee would have two remedies. The EEOC and the statewide Human Relations Commission. That is correct. And the public policy underlying that is it at least gives a bad appearance of having an employee of the city in charge of the investigation and a commissioner of the city then passing on an investigation of a city employee. And to avoid that appearance, the city employee would have to avail themselves of their rights under the EEOC. Is that a common practice in municipalities where there is a separate park district or a separate public entity that could somehow be compared to a park district? So that the city is always in the position of saying, well, we're exempt because we don't want it to look bad that we're reviewing ourselves. I can't say whether that's a common practice or not without speculating. I suspect that it would be because of the underlying policy, but I cannot say. Thank you. Your Honor, making a claim of discrimination can't serve to insulate a person from criminal misconduct or from that being reported. It can't inoculate them against having to have responsible persons, the state's attorney's office or the sheriff's decide if they should be arrested or prosecuted. What was Mr. Brewer to do, the victim of a crime? He had a right to report it. What was the police chief to do? Nothing. If the city's interpretation is correct, then the city... Wait a minute. Police make discretionary choices all the time not to charge or to bring anything to the attention of the state's attorney. That's true, Your Honor. What were they to do? What they were to do is not forward a complaint or a report of a criminal activity. I think that on these facts, Mr. Brewer had a right to complain that he was the victim of a crime. There's no dispute that he was the victim of a crime. There's no dispute. I'm not talking about Mr. Brewer. I'm talking about who prepared the report that was submitted to the state's attorney or forwarded to the sheriff. The chief of police forwarded it on to the sheriff. What's that got to do with Mr. Brewer? Mr. Brewer can go to the state's attorney if he wants to, to go to some screening process and ask to file a criminal complaint. I was asking you... Yes, Your Honor. You said what is he to do and the chief of police of the Park District could do nothing. Yes, he could have... But he chose to do something. Yes, he chose to go to the chief of police of the jurisdiction where the crime occurred. That's true, Your Honor. He did do that, but he could have gone another route. He could have gone and complained to a prosecutor or a police officer somewhere else. He could have. If the city's interpretation of the statute is correct, then the city can regulate the state's attorney's office. If they can regulate us, they can regulate the state's attorney's office. Or they could regulate the public defender's office. If their argument about it being coterminous, these jurisdictions, they could attempt to regulate the circuit court clerk's office in the city of Decatur. The argument that the city raises about exhaustion of administrative remedies, that argument has been rejected and it's in our brief. It's in the Lake County State's Attorney v. Illinois Human Rights Commission case. We proved here all of the elements required to obtain a writ of prohibition. We established them all. The first two weren't even contested. Whether or not this was a quasi-judicial action, whether or not the court was inferior, whether or not we would sustain irreparable harm, not disputed. So the only question is, does the city have jurisdiction to tell us what to do? If they have all that authority, then the Park District Code is a nullity. We don't get to have the decision about whether we hire and fire employees or what we do with them or what happens when there's a crime on our property. We don't get to make that decision. It's all subject to the review of the city of Decatur. And I think the Park Code says otherwise. It doesn't provide for the city to be able to do any of that. And certainly the Human Rights Act doesn't allow for it. They're not regulating the city's affairs. The home rule is just that. It's home rule. It's not regulating somebody else's home or somebody else's house. And as far as Ms. Bates-Elan and whether she would have any other remedies, it's not like she's a person without remedies here. She could file charges in the Illinois Department of Human Rights. She could go to the EEOC in a race discrimination case or a case for retaliation. She could march straight into any court in this country and make a claim under 42 U.S.C. section 1983 that her constitutional rights were violated. So she's certainly not a person without any remedies. The city doesn't want to talk about the facts, but the facts are important. And I hope that the court will pay attention to those facts because we're here on the granting of their 2619 motion. And that means all the facts we allege have to be viewed as true. And here it's not just because we pleaded them or we said so. They're verified. Bear with me, please. This is an interesting argument that if they don't like having to our decisions, they can come back and ask us to rehear a thing. When we argued it the first time, our one and only action before this commission was to say we're not subject to your authority. And if we were, there's this Illinois law here that applies to us and you. You have to follow it. Instead, one sentence decision, no information contained in it whatsoever. Nothing to indicate they even understand what the Tort Immunity Act is. These are people that are simply appointed. The statute's in the record. They're simply appointed by the mayor and they sit on this commission. They're not required to be lawyers. They're not required to be judges. They're not required to be ALJs. Clearly, they have ignored the Tort Immunity Act. And the Haskell decision decided by this court really supports that. These folks at the Park District, if you believe that Mr. Clevenger somehow has something to do with this but his phone conversation is relevant at all, these people are exercising their judgment and discretion. There's no rule book. There's no ministerial actions that they're taking here. They are making decisions that are in their best judgment and the Park District can't be held liable for it, just like the individuals can't be held liable. Thank you, counsel. Thanks. We'll take this matter under advisement and wait for readiness in the next case.